

**SIGNED this 04 day of February, 2011.**

_____
**Shelley D. Rucker**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                                    No. 09-11047
                                                          Chapter 11 Debtor
BARBARA ALLEN CHADWICK,


BRIAN and DONNA WEIR,

         Plaintiffs/Movants,

v                                                    Adversary Proceeding
                                                     No. 09-1183

BARBARA ALLEN CHADWICK, MELVIN CHADWICK,
JAMES THOMPSON, SHAWN THOMPSON, JOSÉ
GERENA, AUSTIN CHADWICK, CHADWICK
FAMILY LIMITED PARTNERSHIP, DUTCH LAUNDRY
LIMITED PARTNERSHIP, PROSPECT APARTMENTS
FAMILY LIMITED PARTNERSHIP, and BANK OF
CLEVELAND

         Defendants/Respondents.

**Memorandum**

In this action the Plaintiffs, Brian and Donna Weir ("Plaintiffs"), seek to avoid the transfer by the Debtor Barbara Chadwick of an entirety interest in her residence (the "Residence").[1]  The recipient of the transfer is a family limited partnership owned by the Debtor and her family members. The Debtor serves as the general partner. The Plaintiffs seek to avoid this transfer on both constructive and actual fraud grounds pursuant to Tennessee's Uniform Fraudulent Transfer Act ("UFTA").  Tenn. Code Ann. § 66-3-305(a)(1)-(2).  Defendants deny that the Plaintiffs can demonstrate either actual or constructive fraud.

Based upon the proof presented at trial, the arguments of counsel and the entire record, the court finds that the Debtor's transfer of her tenancy by the entireties interest in her Residence to the Chadwick Family Limited Partnership (the "Residence Partnership") was not made with intent to hinder, delay or defraud her creditors; however, it was a transfer of an asset for less than reasonably equivalent value at a time when the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur debts beyond the Debtor's ability to pay as they became due.  Based on those findings, the court concludes that the transfer of the survivorship interest to the Residence Partnership is void; and the Debtor's survivorship interest should be returned to the estate for administration through the plan of reorganization.

### I.     Jurisdiction

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this district provide this court with jurisdiction to hear and decide this adversary proceeding.  The

---

[1] Only the transfer to the Chadwick Family Limited Partnership and its members will be addressed in this memorandum.  Defendant Bank of Cleveland was dismissed by an agreed Stipulation of Dismissal entered on July 30, 2010.  [Doc. No. 29].  The Dutch Laundry Barn Limited Partnership and the Prospect Apartments Family Limited Partnership have both had their assets foreclosed by creditors, who held unavoidable liens, leaving no assets owned by those Defendants which could be transferred back to the estate.

Plaintiffs' action regarding fraudulent transfer is a core proceeding.  *See* 28 U.S.C. §
157(b)(2)(H).

## II.    Factual Background

The parties agree that the Debtor Barbara Chadwick ("Debtor") is sixty-two years old and
married to Melvin Chadwick.  Defendants José Gerena, Shon Thompson, and James
Thompson are her sons, and Austin Chadwick is her grandson.  *See* [Doc. Nos. 23-1, 27].  The
Debtor operates a construction business as a sole proprietorship and is seeking to reorganize
that business in a Chapter 11 as a "small business debtor."  There has been neither a creditor's
committee nor a trustee appointed in this case.  *See* [Doc. No. 23-1, Ex. 3, pp. 24-27].

*Weir Litigation Claim*

The Plaintiffs' claim arises from a judgment granted by the Chancery Court of Bradley
County, Tennessee.  The chancery court suit was brought by the Debtor to enforce a lien
against the Weirs on March 20, 2007.  The suit alleged that the Plaintiffs breached the contract
relating to the construction of a home for the Plaintiffs during 2006.  *See* [Doc. No. 23-1, Ex. 3,
pp. 16-22].  The Plaintiffs then filed a counterclaim against the Debtor on June 11, 2007
asserting that she engaged in deceptive and unfair trade practices in violation of the Tennessee
Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* ("TCPA").  *See* [Doc. No. 23-1,
Ex. 4, pp. 31-35].

The parties participated in the trial in the chancery court on several different days
beginning on June 5, 2008 through September 29, 2008.  On February 4, 2009 the chancery
court rendered a judgment in favor of the Plaintiffs in the amount of $382.45.  *See* [Doc. No. 23-
1, Ex. 6, pp. 44-47].

*Creation of the Family Limited Partnership and Transfer of the Residence*

Around the same time that the Debtor began work on the Plaintiffs' house, the Debtor

was involved in a serious motorcycle accident. Her injuries made her realize that she and her husband "didn't have [their] affairs in order." [Barbara Chadwick Trial Testimony, Sept. 21, 2010, at 11:38 a.m.]. To remedy that problem, she attended a seminar on family limited partnerships. After doing extensive study on the seminar materials, the Debtor prepared a deed entitled "Quit Claim Deed" and limited partnership agreements. In the summer of 2008, she organized the Dutch Laundry Barn Family Limited Partnership and the Prospect Apartments Family Limited Partnership into which she and her husband transferred the laundry and the apartments that they owned.

In addition to these new entities, the Debtor formed the Residence Partnership, and the State of Tennessee issued a certificate of limited partnership on June 23, 2008. *See* [Doc. No. 23-1, Ex. 9, p. 60]. The Debtor testified that the partners included the Debtor's husband and her sons, James Thompson, Shon Thompson, and José Gerena, and her grandson, Austin Chadwick. [Barbara Chadwick Trial Testimony, Sept. 21, 2010, at 10:29 a.m.]; [Doc. No. 23-1, Exs. 1-2, 5, 11-13, 15, 16, 19, Deposition of Barbara Allen Chadwick ("Chadwick Dep."), pp. 55-56].

Prior to the execution of the agreement for the Residence Partnership, the Debtor prepared the Quit Claim Deed which she and her husband executed. Trial Ex. 5. The deed transferred a fee simple interest in their Residence to the Residence Partnership. The face of the deed contains a sworn statement signed by the Debtor which states, "I . . . swear or affirm that the actual consideration for this transfer or value of the property transferred, whichever is greater is $∅, which amount is equal to or greater than the amount which the property transferred would command at a fair voluntary sale." There appears to have been no transfer tax paid on the recording. The deed was recorded in the office of the Register of Deeds for McMinn County, Tennessee on June 26, 2010. Chadwick Dep., pp. 54-55; [Doc. No. 23-1, Ex. 10, p. 62].

The parties stipulated that prior to the transfer of the Residence to the Residence Partnership, the Debtor with her husband owned the Residence as tenants by the entirety and that there were no loans or liens against Residence.  [Barbara Chadwick Trial Testimony, Sept. 21, 2010, at 10:29 a.m.]; Chadwick Dep., p. 10.  The Residence is a large home located directly on the Hiawassee River, in Calhoun, McMinn County, Tennessee.  It was built over a number of years by the Debtor and her family and completed in the mid 1990s.  The house has a boat dock and includes adjacent tracts of land.  The most recent tax appraisal of 2009 reflects a value of approximately $460,000 but neither party provided appraisal testimony of its current value.  Trial Ex.6.

*The Residence Partnership Agreement*

The agreement creating the Residence Partnership (the "Residence Partnership Agreement") was introduced as an exhibit at the hearing.  It appears to be a form document which the Debtor testified she prepared herself.  It is not dated.  Trial Ex.17.  Despite paragraph 11.1 of the agreement providing that "Each party shall become bound by the agreement immediately upon fixing his or her signature hereto, independently of the signature of any other Party," only the Debtor signed the agreement.  Where there were lines for the other parties, the Debtor signed their names to the agreement.  The Debtor's signature was notarized on July 8, 2008, and the notary's acknowledgment indicates that only Barbara Chadwick appeared before her.[2]  The Debtor admitted that, after she had created the Residence Partnership, her sons and grandson knew that they each owned 20% of the Residence, but they did not understand the "legal aspects" of the Residence Partnership.  [Barbara Chadwick Trial Testimony, Sept. 21,

---

[2] The acknowledgment is the last page of the Residence Partnership Agreement which inlcudes all schedules.  It is not entirely clear whether the form used by the Debtor provided the acknowledgment for the signatures that were to be attached to the Residence Partnership agreement or for the signatures that were to be attached to Schedule A which granted the property to the partnership. Since the Schedule A has no signatures, it appears that the notary was acknowledging the partnership agreement.

2010, at 10:53 a.m.].  No one reported the transfer as a gift on their tax returns or paid transfer

tax equivalent to the value of the interests being conveyed to the other members.  The Debtor

did not treat her occupation of the Residence any differently after the transfer of the Residence

to the Residence Partnership than she had prior to the transfer.  The Residence did not

generate any income, and she and her husband continued to live in the Residence rent free.

Paragraph 2.1 of the Residence Partnership Agreement, entitled "Initial Capital

Contributions", states, "The initial capital contributions of the Partners are shown on the

attached Schedule 'A.' The percentage interests express the share of property shown on said

attached Schedule 'A,' contributed by and for the Partners. The percentage share of capital of

each Partner is therefore as follows:"

| General Partners | |
|---|---|
| Barbara Chadwick | 10% |
| **Limited Partners** | |
| Melvin Chadwick | 10% |
| James Chadwick | 20% |
| Shon Chadwick | 20% |
| José Gerena | 20% |
| Austin Chadwick | 20% |

*See* Trial Ex. 17.  Schedule 'A' refers to the parties making the contributions as "Grantors".

Three tracts of land (which are the same tracts that are listed on the Quit Claim Deed from the

Debtor and her husband to the Residence Partnership) and a 2006 Volkswagen[3] are listed as

the assets being transferred by the Grantors.  Although there are blanks for such information,

the schedule does not reflect which partner is contributing the asset listed. The schedule has

---

[3] The Volkswagen does not appear anywhere else in the Debtor's schedules or
statement of financial affairs as property transferred to the Residence Partnership. The Plaintiffs
have not sought its return and so the court will not address the Volkswagen.

signature lines for all of the Grantors contributing assets, but none of the partners, including the Debtor, signed Schedule A.

Consistent with the chart above, the Debtor testified that she was the general partner and held a 10% interest in the Residence Partnership.  Mr. Chadwick received a 10% interest, and each of the other family members listed as partners received an interest of 20%.  None of the other partners paid any cash consideration for their interests.  [Barbara Chadwick Trial Testimony, Sept. 21, 2010, at 10:53 a.m.]; [Doc. No. 1, Ex. A].  No proof was offered that any of the other partners, except Mr. Chadwick, contributed any tangible property to the Residence Partnership.

The Debtor testified that her reasons for transferring the Residence to the Residence Partnership was to provide an inheritance to her family members, to prevent disputes between the siblings after her death, and to repay the family members for their help with the businesses over the years.  The Debtor acknowledged that her family did not "have to" help with the business and that she did not allocate the partnership interests based on the value of each members' services.  She did not keep records of their contributions at the time that the family members worked. She also testified that she had not expected her control over the Residence to change as a result of the transfer, and she expected her husband to have the Residence after she died, and then it would be the children's.  She did not intend to put her children in a position to remove her from  her home.  *See* [Barbara Chadwick Trial Testimony, Sept. 21, 2010, at 11:57 a.m., 10:49 a.m.].

*Bankruptcy Filing and Entry of Judgment in Weir Litigation*

On February 20, 2009 the Debtor filed for Chapter 11 Bankruptcy. The Debtor's Summary of Schedules in her Chapter 11 Bankruptcy Case indicates that she has total assets valued at $191,200 (excluding the value of assets she listed as "unknown" which assets included her interest in the Residence Partnership) and total liabilities of $217,611.  [Doc. No.

23-1, Ex. 17, p. 92].  She testified her reason for filing related to the wrongful repossession of

her construction equipment which is the subject of another adversary proceeding before this

court. *Chadwick v. Colonial Pacific Leasing Corp. et al.*, Adv. Pro. 09-1062 (Bankr. E.D. Tenn.)

After the bankruptcy filing, the Plaintiffs sought and obtained relief to lift the stay for the purpose

of liquidating the amount of attorney fees due to the Plaintiffs.  [Doc. No. 64, Order Granting

Relief, entered April 14, 2009, *In re Chadwick*, Case no. 09-11047].  On August 10, 2009, the

chancery court entered an order awarding the Plaintiffs $48,000 in attorneys' fees due to the

Debtor's violation of the TCPA.  *See* [Doc. No. 23-1, Ex. 18, p. 94]; [Doc. No. 27, p. 12].

*Plaintiffs' Standing*

On the afternoon before trial of this adversary proceeding, Defendants filed a motion to

dismiss alleging that the Plaintiffs lacked standing to bring an individual action to avoid

fraudulent transfers.  The Defendants alleged that the court did not have subject matter

jurisdiction to hear a cause of action to avoid a fraudulent transfer brought by an individual other

than a trustee or the debtor in possession.  The court inquired whether the Plaintiffs wanted to

make an oral motion to be allowed to be the representatives of the estate.  Counsel for the

Plaintiffs orally moved that the Plaintiffs be allowed to proceed as the representatives of the

estate.  The court then inquired whether the Debtor intended to pursue these actions.  The

Debtor's counsel indicated that the Debtor did not.  The court found that the Plaintiffs had a

colorable claim. The Plaintiffs agreed that any recovery resulting from the complaint would

benefit the estate and its creditors.  Having confirmed that the Plaintiffs satisfied the

requirements of *Canadian Pacific Forest Products Ltd. v. J.D. Irving, Ltd. (In re Gibson)*, the

court granted permission for the Plaintiffs to bring this action and denied the Defendants' Motion

to Dismiss.  66 F.3d 1436 (6th Cir. 1995).  The court waived Local Rules 7007-1 and 9013-1

requiring a written motion and shortened the time to respond in the interest of preventing an

injustice since the Debtor had waited to raise the issue on the eve of trial after the Defendants

had admitted in their answer that jurisdiction was proper.  *See* Local Rule 1001-1.

**III.    Issues**

The Plaintiffs seek to avoid the transfer of the Debtor's interest in the Residence to the

Residence Partnership based on both "actual fraud" pursuant to Tenn. Code Ann. § 66-3-

305(a)(1) and also "constructive fraud" pursuant to Tenn. Code Ann. § 66-3-305(a)(2). The

parties do not dispute that the Debtor transferred her interest in the Residence to the Residence

Partnership, but an issue does exist whether all or part of that interest is an "asset"  as defined

in Tenn. Code Ann. § 66-3-302(2). The parties do not dispute that to the extent that the interest

is an asset, the conveyance of that asset was a "transfer," as defined by Tenn. Code Ann. § 66-

3-302(12), of an "asset," as defined by Tenn. Code Ann. § 66-3-302(2).  The issues before the

court are:

(a) What part of the Debtor's interest in a tenancy by the entirety is an

asset for purposes of UFTA?

(b) Whether the Debtor actually intended to hinder, delay or defraud her

creditors by making the transfer of that asset; or

(c)(I) Whether the Debtor failed to receive "reasonably equivalent value"

for the transfer, and

(c)(ii) Whether the Debtor knew or should have known that the transfer

would have left her unable to meet her debts as they became due?

(d) If the transfer is avoidable, what is the appropriate remedy?

**IV.    Procedural Posture**

The Bankruptcy Code allows a bankruptcy trustee or the debtor to "avoid any transfer of

an interest of the debtor in property or any obligation incurred by the debtor that is voidable

under applicable law. . ."  11 U.S.C. § 544(b)(1).  If a transfer is avoided, the trustee

may recover, for the benefit of the estate, the property transferred, or, if the court

so orders, the value of such property, from –
      (1) the initial transferee of such transfer or the entity for whose
benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).  There is no trustee in this case, and the Debtor is unwilling to bring this

action against her family and the Residence Partnership which she controls.  The Plaintiffs,

having been granted permission by the court to act on behalf of the estate, may step into the

shoes of the Debtor to bring this action for the benefit of the creditors of the estate.  *See In re*

*Gibson*, 66 F.3d at 1446.

    **V.**    **Analysis**

    The Plaintiffs bring the avoidance action under the UFTA which was enacted in

Tennessee in 2003.  Specifically, the Plaintiffs rely on two UFTA provisions, Tenn. Code Ann.

§§ 66-3-305 and 66-3-306, which allow a court to avoid certain fraudulent transfers of property

by debtors.  These provisions largely mirror 11 U.S.C. § 548(a)(1).  *See Farinash v. Bensusan*

*(In re Prebul Jeep), Inc.*, No. 09-1041, 2009 WL 4581900, at *3 (Bankr. E.D. Tenn. Nov. 30,

2009).  The fraudulent transfer provisions of the UFTA are "generally construed in consonance"

with 11 U.S.C. § 548, with only two key exceptions involving the length of the reach-back period

and the fact that 11 U.S.C. § 544(b) is only available "if a creditor with an allowable claim could

have avoided the transfer under applicable law."  *Id.* at *3, n. 2; *Farinash v. Silvey (In re Silvey)*,

378 B.R. 186, 189 (Bankr. E.D. Tenn. 2007).  Here, the parties do not dispute that the transfer

occurred within the relevant reach back period and that the Plaintiffs were creditors at the time

of the transfer.

    In analyzing the issues in this case, the court finds there is a third difference in the

statutes - the breadth of property interests that can be avoided- and that issue is central to the

parties dispute.  Section 548 provides for the avoidance of "an interest of property of the debtor"

while UFTA allows the avoidance of a "transfer" of an "asset."

To explain the importance of this difference to this case, the court must review the parts of a tenancy by the entirety interest - the type of property interest which the Debtor held before the transfer.  Under Tennessee law, this tenancy is composed of two parts - the present possessory interest and the contingent survivorship interest.  The present interest has been described as an interest which entitles "the husband and wife *as a unit* . . . to current use and enjoyment of the property." *Arango v. Third National Bank in Nashville (In re Arango)*, 992 F.2d 611, 613 (6th Cir. 1993)(citing *Robinson v. Trousdale County*, 516 S.W.2d 626, 632 (Tenn. Sup. Ct. 1974)) (emphasis in original).  The contingent part is the right of survivorship.  If one spouse dies, then the other spouse takes the property in fee simple absolute.  *In re Arango*, 992 F.2d at 613.  The rights to convey or encumber the possessory and survivorship interests are different.

> Each spouse may convey his or her right of survivorship without the consent of the other.  However, the husband and wife's present right to use and enjoy the property may be transferred only by consent of both the husband and wife.  Therefore, a third party, such as a lien creditor, may own one spouse's right of survivorship without the consent of the other spouse, but a third party may not own a present possessory interest in the property without the approval of both spouses.  Accordingly, a creditor of only one spouse may execute a judgment against only that spouse's right of survivorship but not against the spouse's present possessory interest.

*Id.* (citing *Third National Bank v. Knobler*, 789 S.W.2d 254, 255 (Tenn. Sup. Ct.1990) and *Robinson*, 516 S.W.2d at 632).

Both parts of the entirety interest are included in the bankruptcy estate of a debtor. Under the Bankruptcy Code, the debtor's estate is composed of "all legal and equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C.§ 541(a)(1).  Added to that is "any interest in property" that the trustee recovers under section . . . 550.  11 U.S.C. § 541(a)(3).  Interests in property of the debtor have been construed to include any property which the debtor owns with another such as a tenant by the entirety even though under state law it may be viewed as being owned by the marital "unit."  The reason given for this interpretation is that the exemption section of the Bankruptcy Code provides that a tenancy by the entirety may

be exempted from the estate if such an interest is exempt from process under applicable non-bankruptcy law. 11 U.S.C. § 522(b)(2)(B); *In re Arango*, 992 F.2d at 614.  If the entirety property were not part of the estate, then there would have been no reason for Congress to have provided for the exemption.  Based on this interpretation of property of the debtor, both the possessory interest and the survivorship interest become part of the estate.  Once the entirety interest is included in the estate, section 522(b)(2)(B) allows the debtor to exempt the possessory interest because the present possessory interest is exempt from process under Tennessee law.  *In re Arango*, 992 F.2d at 613-614.  The survivorship interest remains in the estate subject to administration for the benefit of creditors.  *Ray v. Dawson*, 14 B.R. 822 (E.D. Tenn. 1981); *In re Arwood,* 289 B.R. 889, 895 (Bankr. E.D. Tenn. 2003).

To the extent that a trustee seeks to recover an interest of property of the debtor under Section 548, he would be able to recover both the possessory and survivorship interest subject to whatever rights the transferring debtor had to exempt those interests (*see* 11 U.S.C. §§ 522(b)(2)(B) and (g)), liens for improvements made by good faith transferee (*see* 11 U.S.C. § 550(e)(1)), or rights of cotenants to restrict a subsequent sale (*see Dawson*, 14 B.R. 822 and 11 U.S.C. § 363(h)).

By comparison, the transfers recoverable under 11 U.S.C. § 544(b) are more limited when the applicable state fraudulent transfer law is based on the UFTA.  The UFTA allows the avoidance of a transfer of only an "asset."  Tenn. Code Ann. §§ 66-3-305 and 306.  The definition of asset specifically excludes "an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one (1) tenant."  Tenn. Code Ann. § 66-3-302(2)(C).  The Comments to the Official Text describe the reason for this limitation:

> . . . [T]he rules restricting the levyability of interest in entireties property are limitations on the rights and remedies of unsecured creditors, and it is therefore appropriate to exclude property interests that are beyond the reach of

unsecured creditors from the definition of an 'asset' for the purposes of this Act.

    . . . . The definition in this Act requires exclusion of interests in property held by tenants by the entirety that are not subject to collection process by a creditor without a right to proceed against both tenants by the entirety as joint debtors.

Tenn. Code Ann. § 66-3-302, Comments to Official Text (2).  Tennessee case law holds that creditors of only one tenant may not obtain rights in the present, possessory interest held by the couple.  *Weaks v. Gress*, 474 S.W.2d 424, 426 (Tenn. Sup. Ct. 1971).  Since the present possessory interest is not an asset, that portion of the entirety interest cannot be "transferred" under UFTA.

The Plaintiffs have stepped into the shoes of a trustee who may proceed under Section 544(b), and they have specifically alleged that the applicable state law of fraudulent transfers is the Tennessee UFTA.  Consequently, only the survivorship interest may be avoided.  It is the portion of the entirety interest that may be reached by creditors of only the Debtor and is the only asset that constitutes a transfer.  For purpose of the remaining discussion, the interest to be considered for avoidance will be the Debtor's survivorship interest.

    **A.**    **Actual Fraud**

The UFTA provision relating to actual fraud states:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; . . .

Tenn. Code. Ann. § 66-3-305(a)(1).

In general, the "concern for avoidance law is an actual intent to hide assets from a creditor."  *In re Prebul*, 2009 WL 4581900 at *5.  A creditor must demonstrate the actual intent to defraud by a preponderance of the evidence.  *See Stevenson v. Hicks (In re Hicks)*, 176 B.R. 466, 470 (Bankr. W.D. Tenn. 1995).  However, where a "defendant has failed to produce

evidence which would prove that a legitimate reason existed for the debtor transferring the money to the defendant," then a court "may properly presume fraud." *Id.* at 471 (citing *Citizens Bank & Trust Co. v. White*, 12 Tenn. App. 583 (Tenn. Ct. App. 1930)) (other citations omitted). Here, the Debtor did not admit that she transferred her interest to defraud creditors, so the Plaintiffs must show intent by circumstantial evidence.

The UFTA also contains a list of several factors for courts to consider in determining whether the debtor had "actual intent" to hinder, delay or defraud her creditors:

> (b) In determining actual intent under subdivision (a)(1), consideration may be given, among other factors, to whether:
> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) The transfer was of substantially all the debtor's assets;
> (6) The debtor absconded;
> (7) The debtor removed or concealed assets;
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tenn. Code Ann. § 66-3-305(b).

The Plaintiffs and Defendants agree that the first two factors are met. The transfer was made to an insider, and the Debtor retained possession and control of the asset transferred. They also agree that (6) and (11) are not present. The Debtor has not absconded, and this transfer does not involve a lien.

The circumstances related to the remaining factors are less clear. With respect to factor (4), although the Plaintiffs' suit was pending before the transfer was made, the Debtor contends

that she viewed the Weir litigation as an asset that would improve her financial position rather than as a liability that would motivate a fraudulent transfer.  She was the plaintiff in the litigation and expected to recover in excess of $40,000 rather than face a liability of $60,000.

     With respect to factor (5), the Debtor asserts that the transfer of the interest in the Residence was not a transfer of substantially all of the Debtor's assets.  Specifically, the Debtor relies on the fact that her construction business continues to be owned solely by her, continues to operate, and will be the vehicle by which a Chapter 11 is funded.  She did not start another company to divert contracts to another entity. The Plaintiffs, in response, point out that there were other significant transfers.  During the summer of 2008, the Debtor created two other entities to hold assets which had previously been owned by the Debtor and her husband. Plaintiffs allege that no substantial assets remained in the Debtor's name after the transfer of the apartment complex and the laundry to limited partnerships.  The court finds that the construction company was a substantial asset that remained in the estate along with equipment and the wrongful repossession suit. The property transferred to the other partnerships was also already encumbered and held jointly with her spouse.

     With respect to factor (7), the removal or concealment of assets, the Plaintiffs argue that putting the Residence into a partnership is concealment, but they cite no authority.  The Debtor counters that her public recording of the Quit Claim Deed and including her name within the name of the Residence Partnership negates this badge.  At least one other court has found a public recording to negate concealment.  *See Nino v. Moyer*, 437 B.R. 230, 238 (W.D. Mich. 2009) (noting that "by recording the quitclaim deeds, there is no indication that Debtor has attempted to conceal either" transfer).  Therefore, without other evidence of concealment the court is not persuaded that the requisite intent was there.  The Debtor properly listed the transfer of the property and her ownership interest as required by the bankruptcy schedules and statement of financial affairs.

The factors (9) and (10) are close calls for the court.  The Plaintiffs did not provide any evidence of the Debtor's  insolvency except the summary of the Debtor's schedules which reflected only about $30,000 more liabilities than assets. The court notes that the summary did not include any value for any of the Debtor's partnerships or construction business.  Trial Ex. 14.  The Debtor admitted that she was facing financial pressures from several sources at the time she filed bankruptcy, but how severe those pressures were in June of 2008 is unclear. The Debtor testified that she was paying her bills timely at the time of the transfer of her interest in the Residence.   However, the Debtor clearly needed more cash to be able to do so.  She refinanced her obligations to the Bank of Cleveland to consolidate her existing debts and to obtain some additional funds to pay existing bills including those attributable to the Plaintiffs' home.  The court concludes that in the context of the Debtor's circumstances, her financial condition, although deteriorating, was not the primary reason for her transfer.  Therefore, the court does not find her financial condition to be a determination factor for actual intent.

Finally, factor (8) regarding whether the transfer was for reasonably equivalent value is also disputed. The Defendants argue that because the Debtor owned the Residence in a tenancy by the entirety with her husband, the Debtor's entirety interest in the Residence was of nominal value to her creditors under Tennessee law and she retained a 10% interest in the Residence Partnership as consideration.  This factor is also a close call and is addressed in greater detail in the court's discussion of constructive fraud.  Like the factors related to the Debtor's financial condition, the court does not find this factor to be determinative for intent.

Where "badges of fraud" have been demonstrated, "the burden of proof shifts to the defendant to explain the transaction and show that it was not fraudulent."  *United States v. Westley*, 7 F.App'x 393, 400, 2001 WL 302068 (6th Cir. Mar. 21, 2001) (citing *In re Hicks*, 176 B.R. 466).  A judge will review the credibility of witnesses at trial to determine "whether the debtor has a plausible reason for the transfer other than the intent to hinder, delay or defraud

creditors." *In re Silvey*, 378 B.R. at 190.  Here, the Debtor expressly denied that her intent was

to defraud her creditors.  She testified that her motivation for transferring the Residence to the

Residence Partnership was to avoid paying lawyers and to prevent inheritance squabbles after

she died.  Her motive to do this estate planning at this particular time was a motorcycle accident

that had shown her that her affairs were not in order should a catastrophic event occur.  She

also testified that her husband had suffered from laryngeal cancer from which he was

recovering.

    The court found the Debtor's testimony to be credible.  Her actions were more consistent

with someone trying to make a bequest rather than to avoid creditors.  She refinanced all of her

other properties to pay her bills.  The bankruptcy was prompted by equipment repossession, not

the entry of the Weir judgment.  Only the Debtor signed the Residence Partnership Agreement,

and she turned over no control of her home.  She explained her understanding of the Residence

Partnership as a way she would keep her home, provide for her husband after her death, and

then pass on her home to her family members in equal shares without a fight and without the

costs of probate.

     In light of the Debtor's conduct and the reasons given for the transfer, the court finds

that the Plaintiffs have not carried their burden that the Debtor intended to hinder, delay or

defraud her creditors through this transfer.

    **B.    Constructive Fraud**

    Plaintiffs also assert that the Debtor has violated the "constructive fraud" provision of the

UFTA, which states:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a
> creditor, whether the creditor's claim arose before or after the transfer was made
> or the obligation was incurred, if the debtor made the transfer or incurred the
> obligation: . . . .

> (2) Without receiving a reasonably equivalent value in exchange for the transfer
> or obligation, and the debtor:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Tenn. Code Ann. § 66-3-305(a)(2)(A)-(B).  The plaintiff "bears the burden of proving, by a preponderance of the evidence, every element of its argument."  *Webb Mtn, LLC v. Executive Realty Partnership, L.P. (In re Webb Mtn, LLC)*, 420 B.R. 418, 431 (Bankr. E.D. Tenn. 2009).

Plaintiffs contend that the Debtor, facing substantial exposure to a judgment, exchanged a substantial asset, her interest in the $463,000 unencumbered Residence for little or no value as defined by the UFTA, Tenn. Code Ann. § 66-3-301 *et seq.*  The Debtor contends that she did receive value because she was satisfying an antecedent debt to her sons created by their investment of  "sweat equity in building the property."  *See* Chadwick Dep., p. 56.  The Debtor also argues that the asset she transferred - a survivorship interest - had only "nominal" value and, therefore, to the extent that she received anything, it was "reasonably equivalent."

In general, where the central issue in dispute is whether a debtor received reasonably equivalent value in exchange for a transfer, the question is one of fact.  *See Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 F.App'x 337, 341, 2006 WL 2380887 (6th Cir. Aug. 17, 2006) (citing *In re Humble*, 19 F.App'x 198, 200, 2001 WL 1006148 (6th Cir. Aug. 20, 2001)); *In re Webb Mtn, LLC*, 420 B.R. at 432-33.  In *In re Wilkinson* the Sixth Circuit further instructed that "[a] court considering this question should first determine whether the debtor received *any* value in the exchange.  If so, the court should determine if the value received was reasonably equivalent."  *Id.* (citing *In re Freuhauf Trailer Corp.*, 444 F.3d 203, 212 (3d Cir. 2006)).

In this case, the Debtor received (I) satisfaction of her perceived obligation to her family members for their work and for their inheritance and (ii) a partnership interest.  The first question before the court is whether either the satisfaction of such an obligation or the

partnership constitutes "value".

 The Debtor cites the definition of "value" in support of her argument that her sons provided consideration in exchange for the transfer of property.  The UFTA provides in relevant part:

> (a) Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

Tenn. Code Ann. § 66-3-304(a).

With respect to the repayment to her family members, the court does not find that their services, while perhaps priceless to their parents, were "value" for the benefit of the creditors. The Debtor testified that they did not "have to do it."  [Barbara Chadwick Trial Testimony, Sept. 21, 2010, at 11:57 a.m.].  They were dutiful sons who were supported by their mother and who enjoyed the family home.  The partnership interests they received were not related to the amount of services provided but rather to the number of relatives to whom the Debtor wanted to give an equal share after her death.  The Debtor testified that these transfers were to avoid family disputes after she passed away and that she had no intention of putting her children in a position to put her out of her home during her lifetime.  She did not explain to them that she had put the Residence in a partnership and had given them all interests which could have been used to oust her as general partner.  Residence Partnership Agreement, ¶ 4.9.  Based on the Debtor's testimony at trial and the manner in which the Residence Partnership was executed, the court questions whether the Debtor really understood the legal ramifications of her transfer or her fiduciary obligations as a general partner.

 Based on the Debtor's testimony and the allocation of partnership interests, the court finds that the transfer to the Residence Partnership and the subsequent distribution of partnership interests to the children and grandchild were attempted testamentary bequests

rather than payments of antecedent obligations.  *See In re Turner*, 78 B.R. 166, 169 (Bankr.

E.D. Tenn. 1987) (noting that "courts have used the term 'voluntary' to describe a transfer by a

debtor to, or for the benefit of, a family member for no consideration or for love and affection,

which is treated as no consideration because it has no value to creditors"); *see also* Tenn. Code

Ann. § 66-3-304 cmt. no.2 (noting that "[t]he definition does not specify all the kinds of

consideration that do not constitute value for purposes of the Act – e.g. love and affection").  As

such, the satisfaction of her desire to provide a trouble-free inheritance for her loved ones does

not constitute value for purposes of determining whether reasonably equivalent value was

obtained by the Debtor .

With respect to the partnership interest, it is an asset that has some value.  It is a 10%

interest in a family limited partnership that owns a residence which could be sold or rented.  The

court must therefore address whether the partnership interest represents "reasonably

equivalent" value for the Debtor's survivorship interest.  Although the statute defines "value" as

stated *supra* in Tenn. Code Ann. § 66-3-304(a), the UFTA does not define "reasonably

equivalent."  The Sixth Circuit has addressed the meaning of "reasonably equivalent" in the

analogous federal statute, 11 U.S.C. § 548(d)(2)(A), which is also undefined in the Bankruptcy

Code.  *See In re Congrove*, No. 04-8049, 2005 WL 2089856, at*3, 330 B.R. 880 (B.A.P. 6th Cir.

2005).  There, the 6th Circuit Bankruptcy Appellate Panel noted that:

> In determining whether value is reasonably equivalent, focus should be placed
> upon the consideration received by the debtor rather than the value given by the
> transferee:
>
> > [T]he proper focus is on the net effect of the transfers on the
> > debtor's estate, the funds available to unsecured creditors.  As
> > long as the unsecured creditors are no worse off because the
> > debtor, and consequently the estate, has received an amount
> > reasonably equivalent to what it paid, no fraudulent transfer has
> > occurred.
>
> "[I]t is clear that the debtor need not collect a dollar-for-dollar equivalent to
> receive reasonably equivalent value."

*Id.* (quoting *Harman v. First Am. Bank (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479,

484 (4th Cir. 1992) and *Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d

1119, 1125-26 (5th Cir. 1993)).  *But see Citizen Southern National Bank v. Auer*, 640 F.2d 837,

839 (6th Cir. 1980) (noting that "[v]alue should not be determined solely by what a stranger

would pay for it.  Rather, it should be determined by considering the value to the recipient

spouse through conveyance of the donor spouse's interest.  Here, it was of considerable value

. . . . Prejudice should be inferred when property has a substantial value, if only to the

recipient").

 The Plaintiffs, as they did in their motion for summary judgment, value the asset

transferred as half of $460,000, while the Debtor contends the value of the transfer was

"nominal" because she only had a survivorship interest.

 Neither party put on proof of either the value of a co-tenant's interest, a survivorship

interest or a 10% general partnership interest in the Residence Partnership.  The Plaintiffs

argued that the court should look at the two interests and determine whether the new asset of

the Residence Partnership interest left the creditors in as good a position as the previously

owned asset – the survivorship interest.  Another bankruptcy court in this district recently

addressed the issue of reasonably equivalent value when there is not an easy dollar to dollar

comparison.  *In re Webb Mtn, LLC*, 420 B.R. at 444.  After citing cases which have rejected a

purely mathematical calculation, the bankruptcy court quoted the Supreme Court's ruling in *BFP

v. Resolution Trust Corp.*,: ". . . while there is no minimum percentage or amount required, 'the

phrase 'reasonably equivalent value' means 'approximately equivalent' or 'roughly equivalent.'"

*Id.* at 444 (quoting 511 U.S. 531, 114 S.Ct. 1757, 1762 n.4, 128 L.Ed.2d 556 (1994)).  The

bankruptcy court continued, "As discussed, the answer to what constitutes 'approximately or

roughly equivalent' must be determined on a case by case basis 'from all the evidence in a

particular case,' and 'fairly concrete' indirect benefits may also be considered."  *In re Webb Mtn,*

*LLC*, 420 B.R. at 444 (quoting *Unencumbered Assets Trust v. Biomar Techs., Inc. (In re Nat'l Century Fin. Enters., Inc.)*, 341 B.R. 198, 215 (Bankr. S.D. Ohio 2006)).

Applying that analysis, the court must start with the value of what was transferred - a survivorship interest.  The value of a survivorship interest may be hard to determine. That interest is held " 'in subordination to the contingent right of the [husband], who, in case [he] survives the [wife], becomes the absolute owner of the whole estate.  So, on the other hand, if the [wife] survives, the purchaser from [her] at the execution sale . . . becomes the owner in fee of the entire estate.' " *Weaks*, 474 S.W.2d at 426 (quoting *Ames v. Norman*, 36 Tenn. 683, 693, 1857 WL 2544, at *5 (Tenn. Sup. Ct. 1857)); *Auer*, 640 F.2d 837.  Because of the contingent nature of that interest, it is usually considered to be of little value.  *Peters v. White Cty. Farm Supply (In re Templeton)*, 1 B.R. 245, 248 (E.D. Tenn. 1979).

The value of this interest has been determined in a number of ways.  It may be valued using an actuarial method or merely a 50/50 split for administrative convenience.  *See In re Murray*, 318 B.R. 211, 214 (Bankr. M.D. Fla. 2004).  Because this is a Chapter 11, if the interest is returned to the estate, it will have to be valued in the context of its use by the Debtor after confirmation.  However it is valued, there is no question but that the survivorship interest has a present value to creditors that could be obtained only by conducting a public sale.  There exists no right of first refusal or prohibition against an immediate sale.  While it may not generate significant value, the interest could generate some immediate value to the estate.

Additional considerations exist in this case that could increase the value. The Residence is unencumbered.  There are also likely to be buyers at such a sale.  The entirety interest has substantial value to Mr. Chadwick.  *In re Auer*, 640 F.2d at 839.  If Mr. Chadwick outlives his wife, he owns the estate free and clear of the creditor's claims.  If he purchases her interest, he would immediately own an asset worth between $400,000 and $500,000 and could remove the risk of losing the property.  It is the family home and may be of significant interest to the other

family Defendants who may desire to purchase the interest to prevent losing the interest in case Mr. Chadwick predeceases the Debtor.

Now the court must compare that interest with the 10% partnership interest.  From a creditor's viewpoint, the partnership interest has one advantage.  Unlike the entirety interest, the partnership interest is not contingent. The interest does not vanish if Mrs. Chadwick predeceases Mr. Chadwick; however, the terms of the Residence Partnership Agreement limit the ability of a successor of that interest to realize any value from the ownership of the limited partnership interest.  The control of the Residence rests with the other members of the family who own 90%.  Residence Partnership Agreement, ¶ 4.9.[4]  The Residence Partnership Agreement does not allow a creditor who executes on the interest to become the general partner.  *Id.* at ¶ 6.7.[5]  A party who takes an interest involuntarily may be only limited partner. *Id.* at ¶ 8.3.[6]  The Residence Partnership currently generates no income, so there would be no distributions.  Only upon a sale of the Residence would the creditor see any proceeds, and there is no motivation for the other partners to charge the Debtor and Mr. Chadwick rent, to

---

[4] Paragraph 4.9 provides for the removal of a general partner by written consent or affirmative vote of 89% of the Limited Partners. The successor must be appointed by the consent of 89% of the outstanding partnership interests.

[5] Paragraph 6.7 provides that "The transferee of a General Partnership interest shall acquire such interest in the capacity of a non- General Partner."

[6] Paragraph 8.3 provides in part that "Any person or entity that beconmes[sic] an assignee of a Partner's interest through an Involuntary Assignment ("Involuntary Assignment") shall receive, for the entire period during which the Involuntary Assignment remain [sic] in force, such Partner's allocation of Net Profits and Net Losses attributable to that Partner's interest in the Partnership, and shall receive only the distributions attributable to that Partner's interest, [sic] In no event and under no circumstances shall any Involuntary Assignee have any right to participate in the management, voting or the administration of the Partnership's business affairs, or assets, or to become a substituted Partner. That is, for the entire period during which the Involuntary Assignment remains in force, andy [sic] such voting rights shall be automatically terminated. Neither shall the Involuntary Assignee have access to the Partnership's books, records and annual statements." To be included as a substituted partner, the general partner must consent to the admission and the new partner must pay a reasonable transfer fee not to exceed 15% of the value.  Residence Partnership Agreement, ¶ 7.1a. and e.

dispossess the Chadwicks in order to charge another party rent, or to sell the family home which they enjoy using.  The owner of this limited partnership interest would own a noncontingent interest that would require a dissolution proceeding to convert to value.

In the *Webb Mtn, LLC* case, the court faced a determination of whether the parties had exchanged reasonably equivalent value.  It looked at a series of cases involving allegedly fraudulent transfers with difficult fact patterns involving "reasonably equivalent value."  The court noted where the other courts had found that the transfers were arm's length and negotiated as part of their determinations.  *In re Webb Mtn, LLC*, 420 B.R. at 444-45.  There was nothing arm's length or negotiated about the transfer of the Residence into the Residence Partnership.

The court believes that the Debtor was trying to make testamentary transfers; and if she could do so in a manner that avoided probate but also "protected" those assets, so much the better.  However, in making the transfer, the court finds that she did not receive reasonably equivalent value.  Both the entirety interest and the partnership interest may ultimately have nominal value; but the court finds that the alienability of the asset and the potential for 100% ownership make the entirety interest more valuable than a 10% limited partnership interest, especially if that partnership is controlled by family members who have not demonstrated any interest in causing the partnership to conduct business for the purposes of making a distribution to the partners.  For the foregoing reasons, the court finds that Plaintiffs have met their burden of proof regarding the first element of constructive fraud.

The court must also address whether the Plaintiffs carried their burden on the second element of constructive fraud.  The UFTA also requires that the Plaintiffs demonstrate either that the Debtor:

> (A) Was engaged or was about to engage in a business or a transaction for
> which the remaining assets of the debtor were unreasonably small in relation to
> the business or transaction; or
> (B) Intended to incur, or believed or reasonably should have believed that the
> debtor would incur, debts beyond the debtor's ability to pay as they became due.

Tenn. Code Ann. § 66-3-305(a)(2)(A)-(B).

The Debtor was facing increased financial pressures at the time of the transfer.  She

was aware of the counterclaim and was trying to refinance her other assets. The word "protect"

is used by her sons in describing how their mother explained the creation of the Residence

Partnership.  At about the same time the Debtor did refinance the properties in the other two

partnerships in order to make payments on the Weir job and pay other expenses.  She was

borrowing to make ends meet rather than increasing her net worth.  Her interest in the

Residence was an asset which she maintained debt free.  While she may not have been

insolvent, she was aware that her financial situation was deteriorating and could get worse if

she was not successful in her suit with the Plaintiffs.  The court therefore concludes that the

Plaintiffs have met their burden of proof regarding the second element of their constructive fraud

claim.

### C.    Avoiding the Conveyance

Having determined that the transfer is a fraudulent transfer under the UFTA, the court

must address the appropriate remedy.  Section 308 of the UFTA provides various remedies that

are available to the creditor.  The creditor may obtain: (a) avoidance of the transfer or obligation

to the extent necessary to satisfy the creditor's claim, (b) attachment of the asset transferred or

other property of the transferee in accordance with the procedure prescribed by title 26, (c) an

injunction prohibiting further disposition by the debtor or the transferee, or (d) any other relief

the circumstances may require. Tenn. Code Ann. § 66-3-308.

Section 309 of UFTA also provides that a judgment for the value of the asset transferred

may be entered against the transferee or against any subsequent transferee of the asset or for

whose benefit the transfer was made.  Tenn. Code Ann. § 66-3-309.  The value should be

based on the value of the asset at the time of the transfer, subject to adjustment as the equities

may require.  Tenn. Code Ann. § 66-3-309(c).

Relying on *In re Silvey*, the Defendants contend that the Plaintiffs' remedy is further limited by Tenn. Code Ann. § 66-3-309(b) to the lesser of the value of the asset transferred or the amount necessary to satisfy the creditor's claim. 378 B.R. at 197. The statute states in relevant part: ". . . to the extent a transfer is voidable in an action by a creditor under § 66-3-308(a)(1), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less." Tenn. Code Ann. § 66-3-309(b). The court disagrees that this limitation is applicable. Since the Plaintiffs are proceeding on behalf of the estate, the recovery is not limited to the amount of the Plaintiffs' claim but rather to the amount of the claims of all of the Debtor's creditors. *Maxwell v. Barounis (In re Swiontek)*, 376 B.R. 851, 862 (Bankr. N.D. Ill. 2007).

On the other hand, the Plaintiffs argue that a judgment should be entered against the Defendants and half the property or 50% of its value should be returned to the estate. In order for the court to agree with the Plaintiffs' argument, the court would have to determine that the joint and voluntary conveyance of the Residence destroyed the tenancy by the entirety and changed the parties' interests into tenancies in common. The Defendants argue that Tennessee law prohibits such a result.

In *Covington v. Murray,* the case on which the Defendants rely, the Tennessee Supreme Court addressed the claims of a receiver for a defunct baseball club who alleged that the defendant husband (and former president of the club) fraudulently conveyed to his wife some real property that had been held by the two as tenants by the entirety prior to the conveyance. *Covington v. Murray*, 416 S.W.2d 761 (Tenn. Sup. Ct. 1967). The creditor sought to set aside the conveyance as void and argued that the conveyance terminated the couple's tenancy in the entirety. In determining that the fraudulent conveyance did not convert the tenancy in the entirety to a tenancy in common, the Tennessee Supreme Court reasoned:

> The conveyance in fraud of creditors is not merely voidable at the option of

creditors, but is absolutely void as if it never existed.  Though good as between
the parties, it is to be treated when those, as to whom it is void, are contesting it,
as though it were void for every purpose.

Accordingly, if the conveyance was fraudulent, it was void ab initio as to the
creditors.  And, as to them, in the event the deed was set aside at their
insistence, the tenancy by the entireties would have been restored and [the wife]
took a fee simple title on the death of her husband.

*Id.* at 764.

The Tennessee Supreme Court categorized the receiver's argument that the tenancy

had been destroyed as being one based on estoppel by deed.  The court held that:

[t]he doctrine of estoppel may be urged to protect a right, but never to create one.
. . . The right of the creditor of the deceased in the property prior to his
conveyance to his wife was only a contingent interest in the husband's right of
survivorship. The lien created by the filing of the bill could only attach to the
interest owned by deceased as a tenant by the entirety.

*Covington*, 416 S.W.2d at 764.[7]

Although state law is clear on the point, there are bankruptcy courts which have not

allowed the interest transferred to revert to a tenancy by entirety after the transfer was avoided

and the property recovered for the benefit of the estate.  One such decision relied on the intent

of the parties to destroy the entirety to hold that the entirety should not be restored.  *See In re*

*Templeton*, 1 B.R. 245. Other courts base their decisions to refuse the tenancy by the entirety to

be restored on a finding that federal interests demand a different result and that state law has

been pre-empted.  *See e.g.*, *In re Swiontek*, 376 B.R. 851.

Regarding the intent of the parties, the Bankruptcy Court for the Eastern District of

Tennessee, found that a trustee could recover the sale proceeds of property previously held by

---

[7] The court's ruling was perhaps made easier by the fact that the fraudulent transferor
had already died by the time the trial court heard the case. The chancellor had ruled that if the
transfer had been valid, the wife took the property in fee simple.  If the transfer were fraudulent
and the creditor had obtained the survivorship interest, the creditor would still have nothing.
The chancellor and the Supreme Court did not have to consider the impact on the creditor of
losing his contingent right to obtain the whole interest or the problems with having to wait years
to determine whether the creditor's interest would become a fee simple interest.

a husband and wife as tenants by the entirety and that those proceeds would be free and clear

of the wife's survivorship  interest.  *In re Templeton*, 1 B.R. 245.  The court found that a

husband and wife own property as tenants by the entirety unless a contrary intent is shown.  *Id*.

at 249 (citing *Burt v. Edmonds*, 456 S.W.2d 342 (Tenn. Sup. Ct. 1970); *White v. Watson*, 571

S.W.2d 493 (Tenn. Ct.  App. 1978)).  The court found that the sale of the real property and the

use of proceeds to pay the debt of only one spouse manifested the intent of the parties to no

longer hold the proceeds as tenants by the entireties.  As such, the tenancy was ended.  When

the trustee recovered the preference, the court held that the proceeds from sale of the

transferred property were free and clear of the claims of the wife.  *In re Templeton*, 1 B.R. at

249.  The court found that "[t]his course of action more nearly carries out the aims of the

bankrupt and his wife and at the same time is more efficient than having the trustee hold the

money pending the death of the bankrupt or his wife.*" Id*.

　　　In this case the Debtor and her husband made a knowing, joint and voluntary decision to

cease holding the Residence as tenants by the entirety.  The Quit Claim Deed to the Residence

Partnership is evidence of that decision.  Their intent to terminate their entirety interest could

also be inferred from the issuance of the partnership interests in their individual names with no

right of survivorship in favor of the other spouse.[8]  However, the implications of these actions

are contradicted by the Debtor's testimony at trial.  She testified that she created the Residence

Partnership to allow her to retain control of the property, provide for her husband if she died,

and provide the children with the property after his death without her perceived problems of

probate.  In addition, after the formation of the Residence Partnership, the court can find no

evidence that the Debtor treated her ownership of the property consistent with the terms of the

Residence Partnership or acted solely in her capacity as a general partner.  These actions and

---

[8] The Residence Partnership Agreement does provide for the partners to hold interests
jointly with their spouses.  Residence Partnership Agreement, ¶ 6.2.

her testimony are consistent with an intention to maintain the ownership as tenants by the

entirety.  This testimony is also consistent with the court's finding that the transfer was more in

the nature of a defective testamentary bequest than a concealed effort to keep assets away

from creditors.

Since the intent is not clear, the court will address other cases that prohibit reversion on

the basis that federal bankruptcy law requires a different result than a state's law allowing

reversion.  In the case of *In re Swiontek*, the trustee sought to recover property under Sections

544 and 550(a) of the Bankruptcy Code.  376 B.R. 851.  The trustee contended that fraudulently

transferred property previously held as tenants by the entireties should not revert to entirety

property when the transfer is recovered for the estate.  He argued that the entirety that existed

prepetition was extinguished by the debtor once the transfer was made.  *Id.* at 861.  The

transferee argued that Illinois law required the reversion of the entirety interest to prevent a

windfall to creditors of only one tenant who could not have reached the debtor's entire interest.

The court acknowledged the existence of the state law holdings and agreed that they would

control  "*unless federal interests demand a different result.*"  *Id.* at 864 (citing *Butner v. United

States*, 440 U.S.48, 99 S.Ct.914, 59 L. Ed. 2d 136 (1979)) (emphasis added).

That court found that in its case, federal interests expressed by the enactment of the

Bankruptcy Code and the specific language of Section 522(g)(1) did demand a different result.

It reasoned that the Bankruptcy Code's inclusion of all property of the estate and the prohibition

against exemptions for voluntarily conveyed and recovered property of the debtor evidenced

Congress' intent that recovered  property not revert to its pre-transfer status.  376 B.R. at 864-

65.

The argument can be summarized as follows: If the property recovered includes both the

present possessory interest and the survivorship interest, then allowing the tenancy to revert to

a tenancy by the entirety effectively allows a debtor to exempt the present possessory interest

under Section 522(b)(2)(B).  That bankruptcy provision permits the exemption of whatever

portion of the tenancy by the entirety which the relevant state law protects from the claims of

that debtor's creditors.  Since many states protect the present possessory interest from

creditors, the "522(b) exemption" contradicts Congress' clear statement in 11 U.S.C. § 522(g)

that property of the debtor (both the debtor's possessory interest and the survivorship)

recovered by a trustee under Section 550 which was voluntarily conveyed away by the debtor

may not be exempted.[9]

Another case that relies on this federal interest and refuses to allow reversion is *Barbera*

*v. Nathan (In re Barbera),* No. 95-4610, 1996 WL 446821, at *9 (Bankr. E.D. Mich. Aug. 5,

1996), aff'd, 156 F. 3d 1228 (6th Cir. 1998).  In that case, the husband transferred his entireties

interest in three properties to his wife.  None of the deeds was recorded prior to bankruptcy.

The court avoided the fraudulent transfers and authorized the trustee to sell the recovered

property free and clear of the claims of the wife and retain the debtor's half of the sale proceeds

for the estate.  The bankruptcy court discussed Michigan law that provided for reversion but

found that federal law required a different result based on the exemption argument.  Its decision

was affirmed by the district court and the court of appeals.

In the bankruptcy court, the debtor argued that he had made a mistake and that in trying

to improve his position, he had worsened it.  He contended that invalidating the transfers would

produce a windfall to the creditors if the property did not revert to a tenancy by the entirety.

---

[9] It is this prohibition against allowing an exemption on which a line of bankruptcy courts rely for finding that the voluntary conveyance of property of the debtor, whether exempt or not, results in the loss of the exemption for both the possessory interest under Section 522(b)(2)(B) and any exemption in the value of the survivorship if it is sold.  The *In re Swiontek* court analogizes the reversion argument made by the defendant in its case to the arguments made by other defendants in avoidance cases, *i.e.* that there should be no recovery in situations of the transfer of exempt property under a "No Harm, No Foul" interpretation of the avoidance provisions.  376 F.3d at 865, n.8 (*see* cases allowing and rejecting the "No Harm, No Foul" defense).  The court finds that a majority of courts have rejected the "No harm, No Foul" argument as a defense to an avoidance action.

1996 WL 446821, at *8.  The bankruptcy court was not sympathetic to this argument.  It noted

the problems with allowing an improper exemption and rejected the "no harm, no foul" defense.

*Id.*

This court faces the same question in this case.  What interest should the estate recover

after a determination that the transfer is avoidable?  The Tennessee Supreme Court's holding in

*Covington* would put the transferor back in the same position she was in before the transfer.

416 S.W.2d 761.  *In re Barbera* and *In re Swiontek* would prohibit reversion if there are federal

interests in the case that demand a different result. 1996 WL 446821; 376 B.R. 851.

The court finds that federal interests do not require a different result in this case.  The

Plaintiffs chose to pursue only state law remedies.  Section 544 of the Bankruptcy Code allows

the trustee - or in this case, the Plaintiffs - to avoid what can be avoided under applicable state

law.  As stated previously, the applicable state law is the UFTA.  In light of the restrictive

definition of asset under the UFTA and the UFTA requirement that a fraudulent transfer be a

transfer of an asset, the court concludes that the only fraudulent transfer that may be avoided

under section 544 is the transfer of the survivorship interest.  Under 11 U.S.C. § 550, the

property being recovered is only the survivorship interest.  The Debtor has not exempted either

her partnership interest in the Residence Partnership or her survivorship interest in the

Residence; and if recovered, 11 U.S.C. § 522(g) would prevent her from doing so in the future

should she become the owner in fee in the future.  *In re Arwood,* 289 B.R. at 897 (regarding the

debtor's contingent right to claim a homestead exemption in entirety property after obtaining a

fee simple interest).

With respect to the other part of the entirety interest, the present possessory interest,

that interest was not subject to claims of just her creditors, and a transfer of that interest would

not qualify as a fraudulent transfer under UFTA.  Since it could not be avoided under the UFTA,

it is not avoidable under 11 U.S.C. § 544(b) and it is not recoverable under 11 U.S.C. § 550.

Therefore its exemption would not be prohibited by Section 522(g).  In this case, there is no

conflict between the state law and bankruptcy law results.  Based on the findings of this court,

the court does not think the federal supremacy analyses of *In re Swiontek*[10] and *In re Barbera*[11]

apply to the facts in this case.  *See* 376 B.R. 851; 1996 WL 446821.  The court will allow the

interest transferred to revert to its status as an entirety interest and the survivorship may be

recovered for the benefit of the estate.

For the reasons stated *supra*, the transfer will be avoided and the transfer of the

Debtor's survivorship interest in the Residence will be declared void as to the creditors in her

bankruptcy case.  The court also finds that an injunction is appropriate.  To protect the creditors

of the estate from any further act by the partners which might destroy the status of the

survivorship interest or alter the possibility that the estate might become the fee simple owner of

the Residence free and clear of liens, the court will enjoin the Residence Partnership and the

individual partners of the Residence Partnership from transferring or encumbering the

Residence or their partnership interests.

## VI.    CONCLUSION

The court concludes that the Debtor did transfer an asset for less than reasonably

equivalent value at a time when she reasonably should have believed she would not be able to

---

[10] *In re Swiontek* was decided based on the Illinois UFTA which contains a definition of *asset* that is identical to the Tennessee version. 740 ILL. COMP. STAT. ANN. 160/2(b)(3). The court did not address the elements of a fraudulent transfer because the debtor in that case did not dispute that the technical elements of a fraudulent transfer had been met.  *In re Swiontek*, 376 B.R. at 861.

[11] In *In re Barbera*, section 544 was the operative avoidance statute used by the trustee; however, neither party raised the definition of "asset" as a defense to the application of the federal supremacy argument.  The case was also decided under the Michigan Uniform Fraudulent Conveyances Act which has since been repealed.  That statute was replaced in 1998 with the Michigan Uniform Fraudulent Transfer Act in which the specific exclusion for tenancy by the entirety property which is not subject to process by a creditor appears. MICH. COMP. LAWS ANN. § 566.31(b)(iii).  The bankruptcy court also found actual fraud and concealment of the assets and relied on the debtor's conduct as another reason that reversion which might allow an otherwise prohibited exemption was not appropriate in that case.

pay her bills as they became due.  Therefore, the transfer of the Residence to the Residence

Partnership will be avoided.

The real property shall be subject to a lien in favor of the Debtor's estate up to the

amount of all outstanding unsecured debt; provided the amount of that lien shall be reduced to

the value that is determined for the Debtor's survivorship interest in her plan of reorganization or

any amount received by the estate on account of the disposition of that interest in the case.

The Defendants who are partners in the Residence Partnership will be enjoined from

transferring their interests in the Residence Partnership or the Residence until the court

dissolves the injunction or upon confirmation of the Debtor's case, whichever occurs first.

The Plaintiffs' claims against the Dutch Laundry Barn Limited Partnership and the

Prospect Apartments Family Limited Partnership will be dismissed as moot.  The real properties

and the income generated by their operation in which the Debtor held an interest, have been

foreclosed by a secured creditor holding an unavoidable lien.

The court will enter an order consistent with this memorandum.  This memorandum

constitutes the court's findings of fact and conclusions of law under Rule 7052 of the Federal

Rules of Bankruptcy Procedure.